LUTHER P. WIGGIN & another *vs.* HENRY C. BUTCHER & others.

Suffolk.    March 12, 1891. — October 23, 1891.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Contract of Sale — Warranty — Rescission.*

A statement in a letter of instructions from a seller to his agent relative to hams offered for sale, that "there is an occasional ham sour in the marrow," coupled with the question, "Why do you not get the buyer to try them off in body and marrow, and make a careful inspection, and report best bid for them ?" is not a warranty that not so many as one third of the hams were sour in the marrow.

TORT, for false representations, with counts in contract for money received by the defendants to the plaintiffs' use and upon an account annexed, to recover the price of fifty tierces of hams, sold by the defendants to the plaintiffs.

At the trial in the Superior Court, without a jury, before *Hammond,* J., it appeared in evidence that the defendants, on May 11, 1888, wrote to Joseph W. Stone, a provision broker who acted as their agent in relation to the hams in question, as follows: " The three tierces of Squire's hams are a sample of the lot, and we want to sell them on sample. Some of them are not sweet in the marrow. They have been in the very finest cold storage possible, not above 38 degrees at any time. We believe that Squire's price for pickled hams is now 10¼ to 10½, and we still sell these hams at 9½, freight paid to Boston, if we cannot do better, but we do not guarantee them sound in body and marrow. We want to sell them for what they are."

There was also evidence, and the judge found as a fact, that the hams were bought by the plaintiffs of Stone, upon representations made by the defendants in another letter written by the

defendants to Stone on May 15 following, which was as follows: " Dear Sir, — Your favor of the 14th received and noted. What little pickle there was on the hams would naturally be sour, but the hams are not sour. There is an occasional ham sour in the marrow. Why do you not get the buyer to try them off in body and marrow, and make a careful inspection, and report best bid for them? We hope to be able to sell them here to some better advantage than we authorized you to sell them, namely, $9\frac{1}{2}$, in a few days. If you can do anything, though, please report by wire."

The plaintiffs also introduced evidence tending to show, and the judge found as facts, that the plaintiffs did not intend that the hams should be sold upon the letter of May 15 by itself, and made no other representations of the quality or condition of the hams than those contained in the letters above set forth, which comprised all the authority or instructions which Stone had for making the sale; and that no other letter of the defendants than the one of May 15 was shown to the plaintiffs by Stone before the purchase. It also appeared that the plaintiffs paid for the hams upon receipt of the bill of lading, and before seeing them ; that immediately upon receiving the hams they refused to accept them on account of their being sour in the marrow, and immediately reported that fact to Stone ; and that Stone requested the plaintiffs to smoke some of the hams, which the plaintiffs did, and thereupon they claimed to rescind the contract, and declined to accept the hams, and offered to return the same to the defendants, but the defendants declined to accept them.

The judge filed the following memorandum with his finding: " I find as facts, that plaintiffs bought the hams after seeing the letter of May 15, 1888, which letter was shown the plaintiffs by the agent of the defendants; that no other representations were made to the plaintiffs as to the hams; that at the time the letter was so shown to the plaintiffs and the trade made, the hams were not sour, but that one third of them were sour in the marrow; that upon the arrival of the hams in Boston the plaintiffs took ten tierces to their store, examined them, and smoked them, and then declined to take the rest, and claimed to rescind the contract. I find that the defendants acted in good faith."

The judge found for the defendants; and the plaintiffs alleged exceptions.

The case was argued at the bar, in March, 1891, and afterwards, in June following, was submitted on the briefs to all the judges.

*R. Lund & W. E. Jewell*, for the plaintiffs.

*A. E. Pillsbury*, for the defendants.

LATHROP, J. On the facts found by the justice of the Superior Court, who heard the case without a jury, the only question open to the plaintiffs is whether the finding should, as matter of law, have been entered for the plaintiffs.

The plaintiffs seek to rescind the sale on the ground that the statement in the letter of May 15, 1888, that "there is an occasional ham sour in the marrow," amounted to an affirmation of the quality of the hams, and constituted a warranty that not so many as one third of the hams were sour in the marrow.

In the opinion of a majority of the court, this statement cannot be treated as such a warranty. The letter which contained the statement was merely a letter of instructions from the sellers to their agent. The expression used was a very indefinite one, "an occasional ham." See *Hogins* v. *Plympton*, 11 Pick. 97, where the words "good fine wine," were said to be "too uncertain and indefinite to constitute such warranty." The expression dealt with a subject about which it was difficult, if not impossible, to have exact knowledge, namely, the condition of the marrow in the hams. It suggested to the agent to get the buyer (and this must mean the person proposing to buy) "to try them off in body and marrow, and report best bid for them." This was equivalent to saying that tests and a careful inspection would be necessary to ascertain what the condition of the hams was. The letter was a fair warning that some undetermined part of the hams was sour in the marrow.

All of the Justices agree that the exceptions should be overruled, and a majority of the court concurs in the reasons above given.

*Exceptions overruled.*